Good morning, Your Honor. My name is Dwight Samuel. I represent Mr. Quesada-Garcia in this particular matter. Although we have raised three issues on appeal, I would like to address one of those issues. Two of them actually dealt with juror misconduct. One dealt with sentencing issues. I provided counsel with a case of U.S. v. Coombs, which was recently decided, and we're prepared to submit that sentencing issue. That leaves only two issues. That would be extrinsic evidence issues and also jury deliberation while not all 12 are present. Once again, I'm going to submit the jury deliberation while not all 12 are present, and I will focus directly on the intrinsic evidence issues presented to this Court on my appeal. In order for us to understand the intrinsic evidence issues, first thing we have to do is we have to look at exactly what, in fact, did occur as it relates to the juror's deliberations and, in fact, what happened before the deliberations even started to occur. At least two jurors did research outside of the Court's arena on the Internet and they determined it and they obtained information which was not presented in open court. About Chacon and his conviction. Yeah. That's about Mr. Chacon and his conviction by a jury. And I think that's a key distinction, not only that he was convicted, but by a jury. Juror M.C. and I know they use the letters rather than their names for confidentiality, and I hope the Court accepts that. But Juror M.C. indicated that he had gone on the Internet and he obtained information about the Garden and MODOC. Now, that's not necessarily all that important in this analysis. However, he's the one that went on to say that Juror L. had indicated that he'd also gone on the Internet and ascertained that there had been a conviction by a jury of the co-defendant, Mr. Chacon. Let's accept your proposition that this is extrinsic evidence. The jurors shouldn't have done this. It was wrong. However, the defense in this case was that Chacon was the guy who was culpable. So I'm having a hard time seeing not only how this hurt your client, but why it didn't help your client. I mean, it corroborated the defense that Chacon was the bad guy, that Chacon had done this. And that's obviously the government's argument in this particular case. Right. Makes sense. What's wrong with it? It makes sense. However, and I wanted to take a look at Mills and Dickerson, and particularly at Dickerson, because Dickerson's court looked past just simply the representations that were made by the bailiff and looked at the totality of the circumstances under which it was made and the significance of it. The bailiff originally said that Mr. Dickerson had committed these kinds of crimes before. And, of course, in the trial itself, the court had been, the jurors had heard that Mr. Dickerson had prior convictions, but they were not of a brutal aspect. Now what we have in this particular case, if you analyze it, is we have two individuals, both charged on the same indictment, and it's there, and they're the only two that are charged on the same indictment, and they're charged with conspiracy. Now, the theory of the defense was that there was no agreement between these parties to engage in a conspiracy. Certainly we argued that the defendant, Chacon, was guilty, but we also argued that there was no agreement. Now, when you put that into context, and you are, and then you see that 12 individuals, independent of the 12 that are now going to decide this decision, also made the determination that Mr. Chacon engaged in a conspiracy and engaged in an agreement with, of course, Mr. Cassata and Lucia, it guts the defense's case completely, and it takes on constitutional magnitudes at that particular point. It is extrinsic. It does not cumulative, because the inferences that are drawn from the statement are, in fact, greater than simply that Mr. Chacon was the defendant that should be guilty. So that's the crux of the argument in this particular case. We did make a motion that it was of a constitutional nature. We do consider that this should be a Dickerson analysis. We do feel that the government has not proven its case or met its burden in this particular fashion. We do think that this is not only cumulative, but it also is prejudicial, as I indicated to the Court. It gutted the defense's argument that there was no conspiracy, that there was no agreement. Well, let me follow up and make sure. I understand your argument, but where does it say in the record that what the extrinsic evidence was, was that Chacon had been found guilty of conspiracy and agreement? It doesn't say that in the record, and nor did it say in Dickerson, didn't give the full analysis either. The record doesn't say that. Well, I thought you said that they found out he'd been guilty of conspiracy and agreement. All I found was that he had been found guilty. And you say that's the difference here, is it was guilty of conspiracy and agreement. I missed that. All right. Well, the record specifically states, and it's there, the indictment only has two defendants. It's only as a conspiracy. The jurors are instructed specifically on the elements to be proven in a conspiracy. Okay. But what I'm trying to hone in on is precisely what M and L found out in terms of what Chacon had been convicted of. Well, and there's where there's a conflict. And, of course, M found out from L that Chacon had been found guilty of the charges now pending against the appellate. That's what they found out. But L had not found that, had he? No. L didn't find that. L denied that. Right. Which is understandable. And then, of course, the judge went on, and I don't think this makes a difference, frankly. The judge went online to try to find it himself. But the judge, you know, we don't know the foundation upon which he attempted to do that, and I think that, frankly, was somewhat improper, although he didn't object to that at that time. But the bottom line is that the state of the mind of the judge was simply trying to get to the bottom of this. There's something wrong with that? No, there's not, other than the fact that we didn't know exactly what the judge did. We didn't know whether the judge followed the same path. But there wasn't an objection. There wasn't an objection to that. No, I didn't. And so — I mean, a judge has an obligation under these circumstances to protect everybody's rights. Absolutely. Absolutely. Including the defendants in this particular case. But also if — I'm sorry. Go ahead. I'm sorry. Oh, no, go ahead. Finish your thought. I think I just finished it, Your Honor. I'm sorry. I'm sorry. But if L didn't find that Chacon had been convicted, and M obtained, allegedly, the information that Chacon had been convicted from L, how is that possible? And didn't the trial judge find that there had been no extrinsic evidence? Didn't the trial judge make that finding? Well, let me — you've got multiple questions here. First of all, I think the significance is the state of mind of M. Even though L may have the — I'm sorry, you're going to — But there has to be extrinsic evidence. I mean, what this juror conjures up in his or her own mind is not extrinsic evidence, is it? Well, where did it come from? Well, didn't the opening argument essentially point the finger to Chacon? Absolutely. The opening statement? However, the opening argument nowhere said that Chacon was convicted by a jury of 12 individuals. Nowhere did the opening statement or anybody say that, in fact, Chacon had entered into an agreement with my client, the defendant. Now, we all know that there are uncharged co-conspirators. That can occur all the time. But the key here is that 12 people, independent of the 12 jurors that are standing there trying to make the decision, had already made this decision that, in fact, there had been an agreement entered into. Otherwise, they couldn't have found Chacon guilty. So nowhere did the defense or prosecution — and it would have been improper for us to say Chacon hadn't been convicted unless there was some kind of agreement. Was any of that elicited by the judge's questioning of the jurors? Any of what? Any of what you just said about the fact that the jurors must have found that there was a conspiracy, and since Chacon was convicted, therefore, Mr. Casale should have been acquitted. I don't think it was elicited or stated by the Court. I don't think it engaged in quite that in the depth and analysis. I mean, this was something that was occurring as we were moving through. We made — I made the objection on the constitutional grounds, which I stated in my brief, and I had moved for a new trial on that basis. But nowhere did the judge make any determination or finding that you've just mentioned. Okay. Thank you. All right. The remaining matters I'll submit, Your Honor, and reserve my time. Thank you, counsel. May it please the Court. My name is Samuel Wong. I'm an assistant United States attorney from Sacramento, California. I represent the United States in this case. I'd like to respond to a few of defense counsel's statements. And the first is, there were three defendants charged in the indictment. The indictment is in the defendant's excerpt of record on page 3. It shows three defendants, Trinidad Sanchez-Chacon, Ezequiel Quesada-Garcia, and Jose Sanchez, all three charged with the conspiracy to manufacture marijuana plants. The trial only involved Garcia. Chacon pled guilty. He was not convicted after any jury trial. He pled guilty to a violation of 18 United States Code section 924C1A1, which is possession of a firearm in furtherance of drug trafficking crimes. As for the third defendant, Jose Sanchez, he was a fugitive. He's never been apprehended. He's never had his day in court. So the defense argument that the extrinsic evidence, first of all, there was no extrinsic evidence, but even assuming there was, the extrinsic evidence that Chacon was somehow found guilty by a jury, and, of course, he was never found guilty by a jury, led the jurors to conclude that he, meaning Chacon, must have conspired with Garcia. Well, there's no logic to that, because, again, there was no jury finding by that Chacon was guilty, and there was another co-conspirator involved in this case, Jose Sanchez. The court, the district court, found, after conducting its own investigation, that there was no extrinsic evidence. First of all, Juror Lemos, he's the one who was accused of going on the Internet and finding the information that Chacon was guilty. Juror Lemos denied that he ever found anything on the Internet. He was looking for it. He was looking for it, but he couldn't find it. So how did Juror M conjure up this idea that he did find it? I think what happened, Your Honor, was there was discussion by other jurors that Chacon was found guilty, because the jurors heard it from Mr. Dwight Samuel during his opening statement. Mr. Dwight Samuel said in his opening statement, and I'll quote, "...Chacon, let's talk about him for a moment, because he is, in fact, guilty of this crime, and we certainly contend." So the jurors heard that during the opening statement. In fact, I was flabbergasted, because I know that as a prosecutor, I could not be introducing evidence like that in an opening statement. But Mr. Samuel was the one who said it. A lot of jurors remember that. In fact, a few jurors, I believe Juror Serlin actually wrote it down in her notes, and she repeated it to some of the other jurors in their discussions. So I would submit to the Court that what happened is Juror McCullough heard what Mr. Lemos said about Mr. Lemos's attempt to find information on the Internet or on the Court's computer, and then mixed it up with what Juror Serlin said about that in opening statement, defense counsel said that Chacon had, in fact, been found guilty. Roberts. And what you have is a finding of fact by the trial court that there was no extrinsic evidence after talking to all these jurors. That's correct. The Court interviewed each of these jurors, and the Court found that there was very little evidence that there was extrinsic evidence put in front of this panel. And then the Court reached the conclusion that little evidence was so weak that there was no extrinsic evidence introduced to the jury. And I suppose, unless that's clearly erroneous, we're bound by it. I would submit that is the case, Your Honor. And here the district court went to the extra step and looked into whether a juror could find information about the Chacon case from the Court's computer system and from the Internet, and the Court conclusively found that that information was not available to the public. The Court, I think, spent the weekend trying to find that information, and after the investigation, the Court said that information was not available to the public. So there was no extrinsic evidence. And even if there was this information about Chacon being found guilty, it was Mr. Samuel who introduced that information to the jury. Why was Juror L excused? Juror L attempted to find information from the Internet. He admitted that? Yeah, he admitted that, but he denied that he found anything. He said that he looked for about two or three minutes, and then he gave up. And there was another juror, Juror Marinovich, who participated in the conversation between Lemos and McCullough, and Marinovich said that he did not hear Lemos say anything about finding information about Chacon's case. So you have Marinovich basically denying or contradicting what Mr. McCullough said. And Mr. McCullough is not the strongest witness here. He could not remember exactly what Juror Lemos said. What other points would you like to make? Your Honor, the defense also raises this issue that the jurors engaged in premature discussions. And the trial court made a finding on that, too. Yes, the trial court made a finding that there was no prejudice. The trial court vaudeered the jurors in court, all 12 of them individually. And the court also defined for the jurors what deliberation meant. And basically that means discussions for the determination of guilt or innocence. And with that definition in mind, each of the jurors said that they had not been deliberating. They had not selected a foreperson. They had not even received the exhibits. They had not even received the written instructions. They were just engaged in casual discussions. Some people weren't even talking about the case. Quite a few of the jurors thought they should have been deliberating, but they weren't. None of the jurors said that they were deliberating. And then the court took the extra step of interviewing each of the jurors individually in court with the remaining jurors outside the presence of the one jury. And each of the jurors then also said that they had not been deliberating and that each would not be prejudiced in any way and would be fair and impartial to both parties in the case. With that in mind, the court gave the jurors instruction, gave the jurors the instruction, start anew. Start with a clean slate. Commence deliberations all over again. And that's what the jurors did. Mr. Garcia received a very fair trial in this case. There was overwhelming evidence of his guilt in this case. Is there anything you want to say? Go ahead. I'm sorry. What do you think about the prejudice prong in this? Do you agree that Mr. Garcia suffered prejudice as a result of the argument that Chacon was guilty of the offense? Or do you agree with Judge Trott? I think when he was asking the question was, well, it seems to me that this fits more into your defense rather than being prejudicial. Garcia suffered no prejudice at all. Garcia wanted the jurors to believe that Chacon was guilty and that Chacon was the person responsible for the marijuana garden. But if they were charged with a conspiracy, could Chacon be convicted of a conspiracy without someone else being involved in the conspiracy? Chacon could have been found guilty of conspiring with the other defendant who was not present. That was Jose Sanchez. And the indictment also says that Chacon conspired with other persons unknown to the grand jury. The greatest persons unknown. There were a lot of other sleeping bags found in this marijuana garden. There was evidence that I think there were 16 ‑‑ I'm sorry, it's a large number, over a dozen pruning shears that were found in this marijuana garden. The number of pruning shears gives you an idea as to the number of co‑conspirators necessary to harvest the 6,451 marijuana plants in this case. There was definitely going to be more than one person involved. This was not a one‑person operation. There were multiple sleeping bags. There were multiple places to sleep. It took several truckloads, truckloads and truckloads, to haul the marijuana away. Notwithstanding, notwithstanding the question about Chacon having been convicted, was the evidence at the trial so overwhelming that Mr. Garcia would have been convicted anyway? Yes, that's what the district court found. The district court recited the evidence in this case, recited the fact that the defendant tried to obstruct justice and lied on the witness stand. The testimony of the witnesses who identified Mr. Garcia as the person involved in purchasing the metal T‑post, the rat poison, there was testimony that Mr. Garcia was the person who bought airtime for the cellular telephone, the receipt for which was found in the marijuana garden. There was evidence that Mr. Garcia was responsible for buying groceries. Mr. Garcia also lied to the owner of the ranch regarding why the water tank was empty of water. And then Mr. Garcia lied and said he never even made that statement to the owner. There was so much evidence against Mr. Garcia, including the fact that he told the realtor that, hey, come this October, I'm going to run into some money, I'm going to be looking to buy some property. Well, October is when marijuana is harvested. The evidence at the trial established that the value of the marijuana was in the neighborhood of $19 to $20 million. And Mr. Garcia was a man of little means before the marijuana garden started. That was what the realtor said. But somehow during that summer and later into the fall, he seemed to come into more money and he was ready to buy at least two pieces of property and help another woman friend of Mr. Garcia purchase a piece of property by giving her the down payment. There was just a mountain of evidence against Mr. Garcia. Do you have anything you want to say on the sentencing issues? Your Honor, I believe the sentencing issue is controlled by two cases. One is the mixed case that the United States cited in its brief. And the second one, and I commend Mr. Dwight Samuel for his integrity in this case, brought to the Court's attention the Coombs case, which was issued after the government filed its brief. And I believe that both of those cases decide the case in favor of the government. And the convictions in this case should be affirmed and the sentence should also be affirmed. If the Court has further questions, I'll be happy to answer the questions. I don't think so. Thank you. You may respond, counsel. Thank you both. Just a short response. I think that the government is engaged in some speculation as to how Juror L and Juror M interpreted what went on. I think it engaged in speculation when it says that Juror M, who was left on the jury, by the way, found out that Chaconne was guilty. And how did that happen? Now, however it happened, in my opinion, makes no difference. It's the state of mind of Juror L, for whatever the foundation might be, that's the relative issue here. You know, you might have a point here, except the Court conducted a pretty thorough investigation of this issue and rendered a finding of fact as to how this happened, what it was all about, concluded there was no extrinsic evidence, and laid the whole thing at your foot by pointing to the fact that you said over and over again, apparently, that Chaconne is guilty. So we're not speculating anymore. As an appellate court, we're reviewing a finding by the trial court on the ground, watching, listening, and hearing to all these people. Well, I think that certainly the facts are as stated. The Court's finding of fact, so to speak, is really a conclusion, and I think that this Court can review that conclusion and make its own conclusion. Unless it's clearly erroneous. If it's clearly erroneous, we don't have to pay any attention to it. Right. But it's got to be clearly erroneous, and that standard of review as described by the Sixth Circuit means it's got to have the stench of a six-day-old, unrefrigerated dead fish. And here, it seems that the Court had plenty of substantial evidence to point to to support its finding. Well, the other point is that, well, I'll submit to that. Okay. Thank you. Thank you both. The case just argued is ordered submitted, as is the last case on the calendar, the Rutherford case, and we will adjourn until tomorrow morning at 9 o'clock. Thanks to all counsel. Thank you.
judges: Schroeder, Trott, Benitez